FAIT & SLAGLE COMPANY, a corporation existing under the laws of the State of Maryland, *vs.* JOSEPH D. TRUXTON and PLANNER J. WILLIAMS.

*Replevin—Practice—Non Suit Refused—Evidence—Decision as to judgment creditors in England vs. Forbes, 7 Houston, 306, Disregarded by a majority of the Court; Grubb, J., dissenting.*

1. The fact that a juror is a nephew of one of the counsel engaged in a civil suit, is not a sufficient ground to disqualify him from serving as a juror in said suit.

2. In an action of replevin for goods sold by the plantiff to a vendee under whom the defendant derived his title, the testimony of persons who have sold goods to the same vendee about the same time, showing that he was then insolvent, and that he knew it, and that he had no reasonable expectation of paying for the goods purchased by him, is competent evidence to prove that his purchase from the plaintiff was fraudulent.

3. A purchaser for a valuable consideration, without knowledge or notice of fraud, takes a valid title from the fraudulent buyer which cannot be defeated by the original vendor.

4. Where goods in the hands of a fraudulent vendee are levied upon under executions issued on the judgments of other creditors whose debts were contracted prior to the alleged fraudulent sale, such levies will not hold good against the defrauded seller, who has elected to avoid the sale or prevent him from recovering the goods or the value thereof in an action of replevin.

5. The right of the vendors to rescind or avoid the contract of sale exists so long as the goods remain in the hands of the fraudulent purchaser, or some one having them with a knowledge of the fraud by which they were originally obtained. Until rescinded the title to the property is in the buyer, who may dispose of it to bonafide purchasers for value, and thus vest in them indefeasible and irrevocable title to the property.

6. The suing out of the writ of replevin is in itself a rescision of the contract.

(*October 12, 1897.*)

LORE, C. J., and GRUBB and PENNEWILL, J. J., sitting.

*A. F. Polk* and *Lewis C. Vandegrift* for plaintiff.

*C. W. Cullen, C. M. Cullen* and *C. F. Richards* for defendants.

Superior Court, Sussex County, October Term, 1897.
ACTION OF REPLEVIN, to recover from defendants $2016.00,

being the alleged value of 96,000 tin cans, with interest, which cans plaintiff claimed were its property and which were unlawfully seized and sold by said defendants as the property of Morrow & Coulbourn, a canning firm doing business at Seaford in this State.

(See charge of Court for further facts.)

At the trial, while empaneling the jury, a juror called to the box proved to be a nephew of one of the counsel for the defendants. Mr. Vandegrift raised the point that the fact of relationship to one of the counsel in the case was sufficient ground for disqualification of a person to serve as a juror, and that the plaintiff should not be required to exercise a challenge.

LORE, C. J:—It is not a sufficient ground for disqualification. You may challenge him; but we do not think that he has such an interest in the case as would exclude him from serving as a juror.

The witness, Edgar F. Kirwan, after having testified as to certain admissions made to him by one of the vendees as to the fraudulent nature of the purchase of the goods replevined in the above case, was asked the following questions by Mr. Vandegrift:

" Did you sell goods to Messrs. Morrow & Coulbourn at or about the same time that Fait & Slagle sold to them?" After answering the above question in the affirmative, the following question was asked—viz:

" With respect to the sale you made to them, did they make similar representations to you as to their solvency that they had made when purchasing the goods of Fait & Slagle?" This question was objected to by counsel for defendants as irrelevant. Plaintiff's counsel contended it was pertinent to the issue in a case where fraud is alleged, and cited *Carey vs. Hotailing, 1 Hill (N. Y. Reports), 311;* also *Rowley vs. Bigelow, 12 Pickering, 306.*

LORE, C. J:—We think, under the authority of *Carey vs. Hotailing, 1 Hill (N. Y. Reports, 311),* that this question is admissible. In the case of *Rowley vs. Bigelow, 12 Pickering, 307,* Chief Justice Shaw lays it down very distinctly. The syllabus in the latter case is as follows:

"In trover for goods sold by the plaintiff to a vendee under whom the defendant derived his title, it was held, that the. testimony of persons who had sold goods to the same vendee, about the same time, showing that he was then insolvent, and that he knew it, and that he had no reasonable expectation of paying for the goods purchased by him, is competent evidence to prove that his purchase from the plaintiff was fraudulent."

The Chief Justice elaborates the syllabus and gives his reasons. It was held that the testimony was admissible.

At the conclusion of plaintiff's testimony, the defendants moved for a non suit upon two grounds, viz:

1.  Because the evidence did not show that the contract between the plaintiff and Morrow & Coulbourn (the vendees) was ever rescinded.

2.  Because no proof was introduced to show that the execution creditors of Morrow & Coulbourn were cognizant of the fraud practiced by said firm upon the the plaintiff, and consequently, said execution creditors occupied the same position as purchasers for value without notice.

Donaldson, Assignee vs. Farwell, et al., 93 U. S. 631; Benjamin on Sales, 433; Hoffman, et al. vs. Noble, et al., 6 Metcalf, 68; Mears & Son vs. Waples, 3 Houst. 581; 4 Houst. 79; England vs. Forbes, 7 Houst. 301.

Mr. Vandegrift: The motion is made to non suit the plaintiff, and two grounds are urged in support thereof:

1.  Because the evidence does not show that the contract between the plaintiff and Morrow & Coulbourn was ever rescinded.

2.  Because no proof was introduced to show that the execution creditors of Morrow & Coulbourn were cognizant of the fraud practiced by said firm upon the plaintiff and consequently said execution creditors occupied the same position as purchasers for value without notice.

The first point was scarcely contended for, the motion being rested almost if not entirely upon the second point. In answer to the first point it is submitted that the question of rescision of the contract does not arise because there was no contract to rescind, Fraud vitiates all things and if the jury shall believe the

proof of fraud offered by the plaintiff, then there was never any *meeting of minds* so necessary as the foundation of a contract and without which it is impossible for a contract to exist.

It is inaccurate to say such a contract is voidable. It is more correct to say that if such a contract has been attempted and failed by reason of vendee's fraud, the vendor must seasonably disavow it or he will be barred from so doing upon the ground of his own laches. The reason for this is because, as some of the cases put it, if the proposed contract is not seasonably disavowed the rights of innocent third parties may arise, which the court will of course protect.

If by reason of this fraud there was no contract by which title to the goods could pass, then there could be no rescission of what did not exist. Some of the cases cited to the above effect were :

*Coghill vs. Boring*, *15 Cala.*, *213; Sargent vs. Sturm*, *23 Cala.*, *359; Buffington vs. Gerrish*, *15 Mass.*, *158; Farley vs. Lincoln*, *51 N. H.*, *579; Ayers vs. Hewitt*, *19 Me.*, *281; Bristol vs. Willsmore*, *1 B. & C.*, *514.*

If there was fraud in this case, then there was no contract, and whether there was such fraud, and consequently whether or not there was any contract is a question for the jury.

Cases *supra*, especially *Bristol vs. Willsmore*, *1 B. & C.*, *514.*

The fact that to speak of a contract such as this as "voidable" (or to speak of "rescinding" it) is inaccurate and unwarranted, is emphasized by a consideration of those cases where notes were taken. In each of those cases it was held that giving up the notes was all the plaintiff was called upon to do, in order to maintain replevin.

*Ayers vs. Hewitt*, *19 Me.*, *281; Nichols vs. Michaels*, *23 N. Y.*, *265; Coghill vs. Boring*, *15 Cala.*, *213; Thurston vs. Blanchard*, *22 Pickering*.

The reason a mere re-delivery of the notes was regarded as sufficient, was to prevent another action upon them against the fraudulent vendee. If "rescission" in its strict and proper sense were required, a mere re-delivery of the notes would not be sufficient, but the fraudulent vendee would have to be put back

in exactly the same position as before the attempted sale. Courts are not solicitous about persons quilty of fraud.

In the Massachusetts cases the courts sometimes speak of a "voidable" sale and a "rescission" of the contract, yet in the case of the minor who had parted with some of the goods procured by the fraudulent representations of his age, the court held replevin would lie for those goods still in possession of the minor.·

*Badger vs. Phinney, 15 Mass., 359.*

This shows we ought never to speak of a contract as "·voidable" or as capable of being "rescinded," which by the fraud in its inception never existed.

Take up now the second point made in support of the defendants' motion, viz : That these execution creditors stand in the same position as would *bona fide* purchasers for value without notice of fraud.

The defendants' counsel in urging this point in support of their motion seem to have entirely lost sight of the fact that this suit is against the sheriff and his bailiff and that these execution creditors are not parties to the suit. How can anything be urged here for their protection when they are not parties ?

This suit being against the sheriff, the proof with respect to him is sufficient to go to the court. It is to the effect that the defendants in the execution were tortiously in possession of the plaintiff's goods. Whether they were or not is a question for the jury.

If the sheriff chose, after notice, to make himself a party to the tortious taking by Morrow & Coulbourn of the plaintiff's goods, he must bear the consequences, and that he did do this has been fully proved; certainly sufficiently to be submitted to the jury.

Whether the execution creditors knew of the fraud of Morrow & Coulbourn is not an issue in this case as it was in *England vs. Forbes, 7 Houst., 301.*

The only issue here is whether the sheriff was apprised of the fact of plaintiff's ownership of the goods and gave them to him, or sided with the tortious holding of Morrow & Coulbourn. If the latter, then the plaintiff should recover.

*Ash vs. Putnam, 1 Hill 302; Acker vs. Campbell, 23 Wendell, 372; Hall vs. Gilmore, 40 Me. 580; Nichols vs. Michael, 23 N. Y. 265.*

It is further submitted that an execution creditor, whose debt according to the proof in this case is prior to the obtaining of the plaintiff's goods by Morrow & Coulbourn, would have no right to the same as against the plaintiff.

The reason of this is because they have suffered no detriment in any way. On the contrary, they in this case profited.

Execution creditors, such as the proof offered shows these to be, would have no right to these goods as against the plaintiff. This is the overwhelming weight of authority.

Cases *supra*, especially *Coghill vs. Boring, 15 Cala. 213; Ash vs. Putnam, 1 Hill, 308; Farley vs. Lincoln, 51 N. H. 579; Bristol vs. Willsmore, 1 B. & C. 514.*

The execution creditors have parted with nothing of value. The proof shows they were creditors of long standing and prior to the dealings by which Morrow & Coulbourn obtained the goods in question.

Another fact controlling here is that an officer, whether sheriff, assignee or bailiff of the liberties, can seize and apply to an execution or other process only the property of the defendant in such execution or other process. Such officer has no right to seize the property of a third person for the debts of the defendant in the execution.

*Farley vs. Lincoln, 51 N. H. 679; Bristol vs. Willsmore, 1 B. & C. 514.*

As to the authorities submitted by the defendants' counsel, they were cases of *bona fide* purchasers for value, except possibly one. With such authorities we at this time have no contention.

The exception referred to is *Forbes vs. England, 7 Houston, 306.*

The case is distinguishable, because suit was there brought against not only the sheriff but also the fraudulent vendee and the execution creditor.

The facts do not show there was such proof as we have introduced here to the effect that the representations were fraudu-

lent, were the inducement to the sale and that there was the intention not pay for the goods.

The assertion of the Chief Justice in that case that an execution creditor was in the same position as a *bana fide* purchaser for value, was not necessary to the decision.

As was said by one of the case cited, *all* the authorities are to the effect that such an execution creditor cannot succeed against the vendor who has parted with his goods through the fraud of the vendee, and if *England vs. Forbes* is to the contrary, it should not be allowed to stand.

, It is, however, not necessary to overrule it under the facts of this case. The proof. here presents a different case in the manner before stated.

It is submitted the motion for a non suit should be overruled.

LORE, C. J:—A majority of the Court think that this non suit ought not to be granted.

While perhaps we are not able now to clearly distinguish between the case at bar and the case of *England vs. Forbes, 7 Houston, 306*, we should like to say that the case of *England vs. Forbes* seems to stand by itself. Counsel on neither side, apparently, have been able to produce any authority for that decision.

The doctrine of this Court—which seems to be absolutely in line with the cases heretofore decided—is so clearly and tersely laid down by Judge Gilpin in the case of *Mears & Son vs. Waples*, (*4 Houston, 581*), designating as it were the class of people who may be termed innocent parties and in that respect having a right to be discriminated either for or against, according to their position, that it seems to us it could not be more clearly expressed. In that case it is confined to this class of persons, viz: "A purchaser for a valuable consideration without knowledge or notice of fraud takes a valid title from the fraudulent buyer which cannot be defeated by the original vendor. And a consignee of goods who in good faith makes advances upon them, stands precisely in the same position as a purchaser for value." That is, somebody who has an interest in the goods for which he has parted with value.

In the case of *England vs. Forbes*, before referred to, this announcement is made by the Court: "Where after possession has

been obtained by a party who purchases under a fraudulent repre-
sentation as to his solvency, they be levied upon by an execution
issued at the suit of a *bona fide* judgment creditor, having no
notice or knowledge of any such representation, his execution
lien cannot be disturbed by, but will hold good against the de-
frauded seller;" and immediately after that the learned Judge in
that case distinctly endorses the doctrine previously laid down in
*Mears & Son vs. Wapels.* Now if the principle laid down in the
latter case is correct, then this decision in *England vs. Forbes* is
incorrect, and we are compelled now to elect between two decis-
ions of this Court. It is not simply that the case of *England vs.
Forbes* goes beyond the other, holding that a judgment creditor
who has made a levy stands in the same position as a purchaser
for value, but it is in antagonism to the principle laid down and
clearly defined in the Mears case. Immediately following what
I first read, the learned Judge in the case of *England vs. Forbes*
says: "It is the law of this State, as decided in the case of
*Mears & Son vs. Waples*, that mere insolvency of the buyer, well
known to himself and concealed from the seller, does not in itself
furnish sufficient grounds for rescinding a contract of sale; nor
will the fraudulent purchase and obtaining of goods with an in-
tention of never paying for them, of itself render the contract ab-
solutely void, even as between the seller and buyer; yet it will
render it voidable at the election of the seller, but if the goods are
sold by such fraudulent buyer to an innocent purchaser for value
the latter will take and hold them under a valid title."

So that the decision in the case of *England vs. Forbes*, not
only goes beyond the decision in the Mears case, but is in con-
flict with the principle laid down in the latter case.

We hold—and we think it the just course—that whenever
the Court finds it has made an error, it is its duty to correct such
error. It is a duty it owes to the public; it is a duty it owes to
the litigants themselves, that they may not be driven to another
Court to ascertain that which this Court believes to be wrong.
Again, it is a principle that the Court will at all times recognize,
that wherever the right is clear, that that right shall be distinctly
announced, and if it has made an error, to correct it in a frank,
manly and prompt manner.

That being the opinion of a majority of this Court, we do not think a non suit ought to be granted in this case.

PENNEWILL, J:—The Chief Justice has very correctly stated the position of a majority of the Court, and I do not propose to go over that at all. I only wish to say that if I could feel satisfied that it has been the settled policy and practice of this Court to adhere to its former decision upon the same subject, even though it was believed that such decision was erroneous, I might feel constrained to be governed by the decision in *England vs. Forbes*, in regard to an execution creditor having the same protection as an innocent purchaser against the claim of the defrauded vendor. But I am not satisfied that such has been the settled policy and practice of this Court, and therefore I must view this as a matter of law and not as a question of policy and practice.

That being the case, I cannot endorse a principle which my judgment does not approve, at least until it has been so declared by the Court of last resort, when I must recognize it to be the law of the State. Not approving of that part of the opinion of Chief Justice Comegys which relates to an execution creditor, I cannot endorse it, and not being satisfied that it has been the policy and practice of the Court to adhere to its former decision under such circumstances, I feel constrained to take the position against granting the motion for a non suit in this case.

GRUBB, J., (Dissenting):—As I dissent from the majority of my brethren and can have no other opportunity to express the grounds of my dissent, and especially because of the serious nature of the consequences that may follow which require my dissent, I will have to express my grounds for it now, because if it should go to the jury, I could not antagonize the charge of the majority of the Court and express my reasons against it.

Let me state this case as it stands before this Court. The plaintiffs, Fait & Slagle Company, a corporation of the State of Maryland, have brought this action of replevin against the sheriff of this county and his bailiff, who have taken the goods in question under an execution and levy. The plaintiffs contend

and have sought to show to this jury, that the alleged sale of the plaintiffs to Morrow & Coulbourn was fraudulent, in that the sale and delivery to Morrow & Coulbourn were procured by means solely and wholly of the fraudulent representation made by Morrow & Coulbourn, the alleged fraudulent vendees, or their agent; that the alleged sale and delivery having been tainted with fraud, the title never vested in Morrow & Coulbourn but remained in the plaintiffs, Fait & Slagle Company; that therefore they had the right to bring this action of replevin, relying upon the title which had never passed from them, and to obtain the value of these goods and damages for the detention from the time of their taking in this action, because the goods (counter bond being given) were never returned to the plaintiffs' possession.

Now it is contended by the defendants in this motion for a non suit that the non suit should be granted on two grounds—or on one at least of the two: First, on the ground that there has not been any evidence in this case of a fraudulent sale and delivery to the vendees which would warrant the submission of this case to the jury, and therefore we are asked not to let it go to the jury for want of sufficient evidence for that purpose.

Their second ground of contention in favor of the non suit is, that even if the Court should be satisfied, that as an absolute fact this sale and delivery as between the Fait & Slagle Company and Morrow & Coulbourn were fraudulent and that no title passed to Morrow & Coulbourn, yet a *bona fide* execution creditor, having made a levy upon these goods without knowledge of such fraudulent sale and delivery, would be protected against the claim of the defrauded vendor or seller, the Fait & Slagle Company in this instance.

So that, laying aside the first ground, which I do not consider it necessary for the purposes of my own judicial action to determine, and assuming, for the sake of argument (although it is denied by the defendants), that it has been proved that it was a fraudulent sale and delivery as between Fait & Slagle Company and Morrow & Coulbourn, still if the law as laid down in the case of *England vs. Forbes*, (*7 Houston, 306*), which has been cited, and in which Chief Justice Comegys appears to have delivered the unanimous opinion of the Court, be so laid down by the Court

and is *res adjudicata* and not mere *obiter dictum*,—then under that law an execution creditor in this State would be protected against the claim of the defrauded vendor, if the execution creditor and the sheriff representing him in the execution of the judgment and the levy had not knowledge, at the time of such levy, either by direct notice or otherwise, that it was a fraudulent sale and delivery to the alleged fraudulent vendees—or to the actual fraudulent vendees—Morrow & Coulbourn in this case.

By reference to said case of *England vs. Forbes*, in which Chief Justice Comegys rendered the decision, it is shown by the third prayer of the plaintiff therein that judgment and execution were pending at the very time of the contract of sale. So there is a case of a debt antecedent to the alleged fraudulent sale and of an execution pending at the very time of the fraudulent sale. For it says judgment and execution were pending at the very time of the levy. That case shows that it was not one where an execution creditor had given credit after the alleged fraudulent sale, but was a case like that now before us of a debt contracted and of a credit given before the time of the alleged fraudulent sale.

I, in common with my brethren, after the very thorough presentation of the authorities and the very forcible argument of the learned counsel for the plaintiffs, am inclined to believe at present, from our hurried and rather imperfect investigation of the question, that Chief Justice Comegys and the Court in that case were probably in error. Still, as the Court announced it as the law, whether their reasons were sound or not, in law, and whether they were right or wrong, the position I take is that, as that case is on all-fours with the case at bar, in legal contemplation, as we all agree, and was not an *obiter dictum* of the Court but was *res adjudicta* by the whole Court, solemnly made in a deliberately written opinion, then this Court ought not to overrule the decision of the Superior Court consisting of all the Judges in that case. Especially when their attention was brought to this very question now before us and when the Chief Justice, speaking for the Court, in language that is explicit and unambiguous, then declared that the exception which was made by Lord Ellenboro and afterwards followed by Chief Justice Gilpin in *Mears & Son vs.*

*Waples*, and which protected a *bona fide* purchaser for value against a defrauded seller, was not confined to such purchaser but extended further and was also applicable to a *bona fide* creditor, whose credit was given upon the indebtedness contracted before the sale, as that secured by these judgments in the case before us, appears to have been. Therefore in that case there was an extreme extension of the doctrine, and, as the learned counsel for the plaintiffs has truly, probably, said, such an extension as cannot be found to have been made by any Court in the United States or in England. Yet this Court did that in a case just like this at bar where the action was brought by the defrauded vendor against the sheriff, representing the execution creditors, and the execution creditors were not named with the sheriff as defendants; it was the fraudulent vendees in the case who were mentioned with the sheriff—Forbes & Banks.

*Mr. Vandegrift:*—And also the judgment creditors.

GRUBB, J:—We do not consider that that distinguishes that case in any substantial way, in legal contemplation, from this case. So that you have in this case here, just as in the case of *England vs. Forbes*, under Chief Justice Comegys, a case where the replevin is brought by the defrauded seller, virtually, against *bona fide* creditors, and nothing to the contrary appears in this case. This Court, through Chief Justice Comegys, in the case of *England vs. Forbes*, have said that they will carry the said doctrine of protection beyond what the Court decided in the Mears case. The Court in the latter case could not have decided judicially that an execution creditor would not be protected against a defrauded seller, because that question was not before them. It was not raised by the facts or by the contention of counsel, and therefore, if so declared therein, it would have been *obiter dictum* and not binding upon us as *res adjudicata*. So that we cannot say that this Court then would have decided contrary to what this Court under Chief Justice Comegys did. That would be merely a supposition. We may think that in carrying out the general principle stated in *Mears & Son vs. Waples* to a logical conclusion, Chief Justice Comegys and the Court should not have decided as they did. But we know that that is what they did. So that the fact confronts us—and it is the one I stand on—that it having

been decided by the Superior Court in this State by a unanimous Court, most solemnly and deliberately, that such was the law, it can matter little to this Court whether or not it is supported by reason or authority. *Stare decisis* has been the doctrine adhered to through ages by generations of judges and lawyers in England and in this country. It has been considered a wise rule and doctrine, in the long run in human experience, and this Court has seldom if ever disregarded it. I have been unable to find any deliberately considered instance of such disregard in the reports of this State. I have known myself, and all the older lawyers will remember that at times the question has been raised and urged that a decision previously made by this Court was wrong, but the answer has been given—" Gentlemen, *ita lex scripta est*— so the law has been written and announced by this Court in this State, and you must go to a higher court for your redress. You are not remediless, because you have a tribunal beyond, which is final in this State." It has often been said, " You will have to go to the Legislature, if you don't go to the Supreme Court;" and that has been done when it was thought that a decision was wrong or would be detrimental or injurious as a matter of policy.

Now I am brought face to face with the time honored doctrine of the law. We have had a decision here, not by a divided Court, not where there is any doubt about the question having been clearly raised and presented or unequivocally adjudicated. I will read what Chief Justice Comegys says on this question in that case of *England vs. Forbes*.

" But if in the case of such vitiated contract of sale, the goods sold have been delivered to the buyer, who sells them to another who buys them *bona fide*, without any notice or knowledge on his part of the fraudulent feature of the sale, such innocent purchaser acquires a valid title to them, which cannot be defeated by the original seller. Likewise, where, after possession has been obtained by a party who purchases under a fraudulent representation as to his solvency, they may be levied upon by an execution issued at the suit of a *bona fide* judgment creditor, having no notice or knowledge of any such representation, his execution lien cannot be disturbed by, but will hold good against the defrauded seller."

We all agree on this matter; that this Court has so decided, and there it is. Relying upon that decision of this Court, the defendants in their second ground have based their motion for a non suit, on the ground that there is no evidence whatever that these execution creditors were not *bona fide* judgment creditors, nor a scintilla of proof that they had any notice or knowledge whatever of the alleged fraudulent sale and delivery. That is true, for there is no evidence before this jury to prove that essential point in behalf of the plaintiffs to enable them to recover. That being so, if such is the law of this State—and it was declared so to be by Chief Justice Comegys and the Court—this Court would have to charge the present jury that they could not find a verdict for the plaintiffs. If they did, we would have to set it aside on a motion for a new trial.

So it comes down to this: There being no evidence within the requirement of Chief Justice Comegys' decision above referred to, entitling the plaintiff to recover, we can only refuse the non suit and let this go to the jury, and give the plaintiff an opportunity to recover before them, by saying that we will declare that what this same Court adjudicated in New Castle County a few years ago is not law. But when we do this we plainly violate, disregard and override the doctrine of *stare decisis*. The considerations which induce Courts to refrain from this are the mischievous consequences which may ensue. Until the decisions of this Court have been overruled in the Court above, we have always adhered to them. This is the unwritten law, here, and counsel advise their clients on the faith of it. There may have been some ill considered exception to this where the Court have done otherwise, but I have always considered that such a departure would prove unwise in both policy and practice.

But there is another thing—and that is why I speak so earnestly to-day—if we let it go forth that counsel may dispute any former adjudication of this Court, solemnly and deliberately made by a unanimous Court, and strive to find whether we will think as they did or not, or recognize the force of the reasoning of the Judges who have preceded us, it furnishes an inducement for every counsel to attempt it. In my judgment, in these days when there is less and less respect shown for authority, and a

manifest desire for short cuts to get on in any way, it would prove a temptation for every able counsel and every strong reasoner to dispute any decision which has been made by this Court, which would be a great wrong to lawyers and others who have advised clients under the same, and it would lead to great inconvenience, and great waste of the public time of the Court, and unnecessary expense, and re-arguing, reconsidering and re-deciding previous adjudications; and we would never know what the mind of the Court is to be, and there would be no certainty, and no end of such mischievous litigation.

I can realize that there are some cases in which a Court might have to overrule itself, where it was clearly wrong before and where a departure from the doctrine of *stare decisis* might possibly be necessary and justifiable. That might be in a court of final resort. It has happened in the Supreme Court of the United States, and it has happened in other courts of highest resort, because otherwise there would be no opportunity to right the wrong. But even those Courts have been very reluctant to do it, where legislation could avert the effect of the injurious decision. They have wisely refrained from such departures except when unavoidably necessary. Where constitutional questions were involved and legislation could not remedy it, in some cases they have reversed themselves.

But here the decision against this plaintiff would not be remediless on this point of law through adhering to the former decision of this Court, even if it was wrong. He can have his writ of error and take it to the Supreme Court, where it has never been taken, and there in the proper tribunal have it decided finally, and to be binding not only in this county but in all the counties of this State.

There are many considerations which have presented themselves to my mind since yesterday. I feel so seriously not only the impropriety, but the absolute absence of any necessity of disregarding this decision of the Superior Court and overriding it, in addition to the serious consequences that may ensue in this State from it, that I here express my dissent as earnestly and solemnly as I can against this ruling refusing the non suit, which does absolutely and unjustifiably override a decision of this Court

heretofore deliberately made by a unanimous Court. Therefore, I have not only dissented but expressed my dissent.

I regret that it has taken so long, but I have done it off-hand and not in writing, and therefore have consumed more time than I intended or desired to do.

### PLAINTIFF'S PRAYERS.

The plaintiff prayed in substance as follows:

That a concealment on the part of the purchasers of their state of solvency, known to themselves at the time, accompanied by a preconceived design not to pay for the goods purchased, is such a fraud as would avoid the contract of sale.

That the question as to the insolvency of the purchasers was for the jury, as was also the question of fraud arising out of the transaction so far as the same was based upon their representations prior to the purchase and their intention to pay or not to pay for the goods purchased.

That a sale effected by fraud works no change of property.

That if the plaintiff was induced to part with its goods by representations of Morrow & Coulbourn, or either of them, or their agent, that they were solvent and would pay for the same, when as a matter of fact said Morrow & Coulbourn, or either of them, then knew said representations were false and their intentions, or the intentions of either of them, then was to obtain said goods and not pay for the same, then if the plaintiff seasonably disavowed the sale and endeavored to reclaim the goods, there was no sale and the title to said goods never passed from said plaintiff, and the defendant as sheriff had no right to hold the same under the execution in his hands but should have delivered the same to the plaintiff as the property of him the said plaintiff not liable to be levied upon under executions issued against the said Morrow & Coulbourn.

*Farley vs. Lincoln, 51 N. H., 579; Ayers vs. Hewitt, 19 Me., 281; Coghill vs. Boring, 15 Cala., 213; Bristol vs. Willsmore, 1 B. & C., 514, 8 E. C. L.; Hall vs. Gilmore, 40 Me., 580; Ash vs. Putnam, 1 Hill, 302; Buffington vs. Gerrish, 15 Mass., 158; Sargent vs. Strum, 23 Cala., 359; Badger vs. Phinney, 15 Mass., 359; Hunter vs. Hudson River &c., 20 Barb. 493; Sevear vs. Dingley, Greenleaf (Me.), 306.*

## DEFENDANTS' PRAYERS.

The defendants prayed as follows:

1. That, where, after possession of goods has been obtained by a party who purchases under a fraudulent representation as to his solvency, they may be levied upon by an execution issued at the suit of a *bona fide* judgment creditor, having no notice or knowledge of any such representation, his execution cannot be disturbed by, but will hold good against the defrauded seller.

*England vs. Forbes, et al., 7 Hous., 301; Mears & Son vs. Waples, 4 Hous., 79.*

2. That the plaintiffs in this action were bound to have rescinded the contract of sale before their right accrued to bring replevin against the vendee and recover the property so sold.

*Goodwin et a.l, vs. Wertherimer, 99 N. Y., 149; Benj.on Sales, 442.*

3. That the property came into the hands of the sheriff, the defendant in this suit, lawfully and not tortiously.

*Goodwin et al., vs. Wertherimer, 99 N. Y., 149.*

4. That after delivery of the goods in pursuance of a sale, the seller cannot rescind the contract or reclaim the goods on the ground of fraud without proving deceptive assertions, or false representations in some form or other, frauduently made to induce him to part with his property. Mere insolvency of the buyer, though well known to himself and concealed from the seller does not in itself furnish sufficient ground for rescinding a contract of sale.

*3 Hous., 621; Noble vs. Adams, 7 Taunton, 259; Hilliard on Sales, 307.*

5. That an intention to deceive, and a false statement, even on a material point, will not overthrow the bargain, unless the statement was the means which produced the bargain; and the onus is on the plaintiff to prove that the plaintiffs acted on the faith of the false representations.

*30 Pa. State Repts., 401; 2 Chitty on Pleading, 519; 2 Parsons on Contracts, 267.*

6. If the plaintiffs chose to act on their own judgment with full knowledge or means of knowledge of the facts they

cannot be heard to say they were deceived by the vendees' representations with respect to the sale.

*Allwood vs. Small, 6th Clark & Finnally, 233.*

7. That in the absence of any stipulation to the contrary, the fair presumption is that the vendor, by delivering the goods before the condition is performed, waives the condition and trusts to the responsibility of his vendee.

*4 Houston, 79; 2 Houston, 268.*

8. Where goods purchased under fraudulent representations, as to solvency of the purchasers, are levied upon by execution of a *bona fide* judgment creditor, having no notice or knowledge of any such representation the execution lien cannot be disturbed but will hold good against the defrauded seller.

*Benjamin on Sales, Par. 432-442; Donaldson, Assignee vs. Farewell, 93 U. S., 631; Hoffman vs. Noble, 6 Met., 68 &c.*

LORE, C. J., charging the jury:

Gentlemen of the jury:—This is an action of replevin, brought by the plaintiffs Fait & Slagle Company, to recover from Joseph D. Truxton, late sheriff of this county, the defendant, the value of ninety-six thousand tin cans, estimated at $1777.00 without interest or calculating interest the claim amounts to-day to $2016.00, which cans the plaintiffs claim were their property, and were unlawfully seized and sold by the said defendant.

The plaintiffs contend that in January, 1895, Morrow & Coulbourn, a firm doing business at Seaford in this State, bought of the plaintiffs, then engaged in business in the City of Baltimore, Maryland, the cans in dispute. That the cans were delivered at Seaford in three lots, on the 25th, 27th and 29th days of June, 1895. That plaintiffs were induced to make the sale and delivery of the cans to Morrow & Coulbourn, by reason of false and fraudulent representations of the said Morrow & Coulbourn or their accredited agent that they were solvent. That within a few days after the delivery of the cans at Seaford, they were levied upon by the defendant Truxton as sheriff, under sundry executions issued upon judgments in favor of other creditors of said Morrow & Coulbourn, which other debts were contracted prior to the sale and delivery of the cans. That Sheriff Truxton

held the said cans under these executions, and did not give them up to the plaintiff when demand was made upon him under authority of the writ of replevin in this case. Instead of giving them up he gave what is called a property bond, retained the goods, sold them and applied the proceeds of sale to other creditors. The plaintiffs, therefore, claim that inasmuch as the cans were procured from them by fraud, by reason of the false and fraudulent representations of Morrow & Coulbourn as to their solvency; that they were entitled to have the cans delivered to them by the sheriff, on demand, under this writ of replevin. That his refusal to make such delivery was unlawful and entitles them to recover.

On the other hand, the defendants contend that no such false and fraudulent. representations of solvency were made by them or by any accredited agent; that even if such representations were made, the plaintiffs did not make sale relying solely thereon, but sought other sources of information and relied upon their own judgment. That even if Morrow & Coulbourn procured the goods by fraudulent representations, the levies thereon, under execution of *bona fide* judgment creditors, without knowledge or notice of such fraud, hold good against the defrauded seller. Defendants further contend that no recovery can be had because the plaintiffs did not rescind the contract of sale before they brought this action of replevin.

To avoid a sale of personal property on the ground of false representations, they must have been made with the fraudulent intent to induce the seller to part with his property and must have been the means of producing the sale on the part of the seller. Mere insolvency of the buyer, though well known to himself and concealed from the seller, *is not in itself sufficient.* But if the purchaser made false representations knowingly, with the intent to deceive, and the seller was thereby deceived, and relying thereon parted with his goods, it would be sufficient to avoid the sale. Again, the plaintiffs may not avoid the sale if they saw fit to make inquiries and rely upon information obtained from other sources; or acted upon their own judgment with a knowledge of the circumstances.

If Morrow & Coulbourn induced Fait & Slagle, to sell and deliver the cans by reason of false and fraudulent representations of their solvency, "the contract was incepted in fraud, and was so vitiated by such fraud that it might be rescinded and avoided or not, at the option of Fait & Slagle." (*3 Houst.*, *620.*) The right of Fait & Slagle to rescind and avoid, existed so long as the cans remained in the hands of the fraudulent purchaser, or some one who had taken them with a knowledge of fraud by which they were originally obtained. Until the contract was rescinded or avoided, the title or property in the goods was in the buyer, and he might sell or dispose of them to *bona fide* purchasers for value, and thus vest in them good, indefeasible and irrevocable title to the property. This is the ruling in *Mears & Son vs. Waples*, *3 Houst.*, *620;* *4 Houst.*, *78;* *England vs. Forbes*, *7 Houst.*, *305;* and has been uniformly followed in this State. The contract therefore was not void, but voidable at the option of the vendor. *Benjamin on Sales*, Sec. *433*, uses this language: "It follows, therefore, that the vendor may affirm or enforce it or may rescind it. He may sue in assumpsit for the price, and this affirms the contract; or he may sue in trover for the goods or their value, and this disaffirms it." This is the authority cited by the defendants to sustain their prayer that the plaintiffs were bound to have rescinded the contract before they could bring their action of replevin. It does not sustain that contention; on the contrary it clearly indicates that the suing out of the writ of replevin was in itself a rescision of the contract. If this were the only contention, the plaintiff would be entitled to a verdict.

But we are asked by the defendants to charge you that, "Where goods are purchased under fraudulent representations as to the solvency of the purchasers, and levied upon by execution of a *bona fide* judgment creditor having no notice or knowledge of any such representation, the execution lien cannot be disturbed by, but will hold good against the defrauded seller."

We cannot so charge. We do not think this proposition is sound in principle or supported by well-considered authority, in a case like the present, where the debt due the execution creditor who has levied upon the replevined goods, was contracted prior to the alleged fraudulent sale.

It is true that in *England vs. Forbes*, (*7 Houst.*, *306*,) it was so decided. It is there, however, coupled with and placed on the same ground as that of the *bona fide* purchaser for value. Neither the reason nor the authority for such ruling is given. The case seems to stand alone, and is in conflict with an unbroken line of authorities from the leading case of *Lickborrow vs. Mason* down to the present time. The case is not very clearly reported as to the facts and questions involved; but if it is correctly reported we think that the ruling therein is very questionable, and the majority of the Court hold that it should be disregarded. An examination of the reports of this State will show that this Court in a number of instances has reversed its former ruling when satisfied that such ruling was wrong. It has recognized that it was its highest duty to announce the law correctly at the first opportunity, and has not been deterred from so doing by any adherence to the doctrine of *Stare Decisis* or by any apprehension that a correct statement of the law would create confusion or lead to supposed trouble or uncertainty. It has wisely determined that litigants should not be placed under the penalty of protracted litigation by reason of the errors of the Court.

In the leading case of *Lickborrow vs. Mason*, above referred to, the rule governing this case was promulgated in this language: "Whenever one of two innocent persons must suffer by the acts of a third, he who has enabled such third person to occasion the loss must sustain it." (*3 Houst.*, *79.*) This rule is followed and the class of persons covered by it is defined by the late Chief Justice Gilpin in the well-considered case of *Mears & Son vs. Waples.* "A purchaser for a valuable consideration, without knowledge or notice of fraud, takes a valid title from the fraudulent buyer, which cannot be defeated by the original vendor. And a consignee of goods who in good faith makes advances upon them, stands precisely in the same position as a purchaser for value, and the same principles of law in this regard apply to his case. And permit me to say that this doctrine of the law is most reasonable and just; because the owner having voluntarily parted with his goods and clothed the buyer with a title which is good until the seller avoids it, which he may do or not as he pleases, it is through his own act that the buyer from him is en-

abled to sell the goods, and, therefore, a *bona fide* purchaser of them without knowledge of the circumstances ought not to be made suffer."

*Benjamin on Sales*, cited by the defendants, *Sec. 433*, states the rule to be, that if before the seller elects to avoid the sale, "his vendee transfers the goods in whole or in part, whether the transfer be of the general or of a special property in them to an innocent third person, for a valuable consideration, the rights of the original vendor will be subordinate to those of such innocent third person."

Under this rule, supported by an unbroken current of authorities, courts of law have brought within its terms, and protected only those persons who were innocent holders of a general or special property in the goods for which they have given a valuable consideration, the loss of which they must suffer if the property is taken away from them, such for instance as the innocent purchaser for value; the consignee who in good faith makes advances upon the goods, relying on the possession permitted by the defrauded seller, who have parted with a valuable consideration, and if the goods are taken from them they must suffer loss.    They are clearly within the rule.

An execution creditor, however, whose debt was contracted prior to the alleged sale as heretofore stated, has parted with nothing; has paid no valuable consideration.    In no sense can he be said to be an innocent sufferer with respect to the defrauded seller.    He has paid nothing for, nor has he acquired any title in or to the goods.    On the contrary, under cover of law he is taking the goods of the defrauded seller, to pay the debts due to him from the fraudulent purchaser.    In other words, he is taking one man's property without consideration to pay another man's debts.    It must be manifest that such person does not come within the rule of innocent holders for value without notice.

We therefore instruct you, that if you believe these cans were procured by Morrow & Coulbourn from Fait & Slagle by fraudulent representations, and while in the hands of Morrow & Coulbourn were levied upon, under executions issued on the judgments of other creditors, whose debts were antecedently contracted as aforesaid, such levies will not hold good against the

defrauded seller who has elected to avoid the sale or prevent him from recovering these goods or the value thereof in this action.

It is for you to apply the law as stated by the Court to the facts in his case. Of those facts you are the sole judges, and you are to determine them not from any statements in this charge but from what you heard from the witnesses who testified in the case.

To entitle them to recover, the plaintiffs must show to your satisfaction by a preponderance of the evidence that Morrow & Coulbourn were insolvent at the time of the sale, and that false and fraudulent representations of their solvency were made by Morrow & Coulbourn or their accredited agent to Fait & Slagle, and that Fait & Slagle were induced to sell and deliver the goods by reason of such false representations and not by reason of any information from other sources or reliance upon their own judgment.

If your verdict should be for the plaintiffs it should be for the value of the goods of which they have been deprived as such value has been proved in this case. If your verdict should be for the defendant, it will simply be for the defendant.

Verdict for plaintiff for $2016.00.